UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FOOD & WATER WATCH, INC.,<br>1616 P St., NW<br>Suite 300<br>Washington, DC 20036,<br><br>*Plaintiff*;<br><br>v.<br><br>U.S. DEPARTMENT OF AGRICULTURE<br>1400 Independence Ave., S.W.<br>Washington, DC 20250<br><br>and<br><br>FOOD SAFETY AND INSPECTION SERVICE<br>1400 Independence Ave., S.W.<br>Washington, DC 20250,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.____________ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I.**

**Introduction**

1. Plaintiff Food & Water Watch, Inc., ("FWW") brings this action against the above-listed Defendants under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2012). FWW has sought to evaluate the effectiveness and popularity of a new controversial U.S. Department of Agriculture ("USDA") New Poultry Inspection System ("NPIS") program that allows poultry-company employees, and not government inspectors, to perform certain

slaughter-line inspections at plants. The organization submitted two FOIA requests that are at issue in this case, both would disclose the identities of the slaughter facilities requesting to employ the new inspection system. Facilities are required to submit this information in order to join the program. The Defendants have unlawfully denied these requests and failed to provide all responsive records. FWW now asks the Court to enjoin the Defendants to produce all responsive agency records improperly withheld from the Plaintiff.

## II.

## Jurisdiction and Venue

2. The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331 (2012). Venue is proper under 5 U.S.C. § 552(a)(4)(B).

## III.

## Parties

3. Based in Washington, DC, Plaintiff FWW is a national, non-profit, public-interest, consumer-advocacy organization that works to ensure safe food and clean water. FWW has long voiced concerns about the Defendants' NPIS rules, even challenging their lawfulness in federal court. FWW is concerned that plants opting into the system will produce more adulterated and unwholesome poultry product, threatening its members and the general public. FWW has sought to educate members of the public about the program. It seeks the identities of the plants planning to adopt the system so that it can continue to evaluate these facilities and inform its membership and the public about them. FWW also seeks to evaluate the Defendants' present and prospective capabilities to provide adequate inspection resources to these facilities, and it intends to assess the popularity of the program by various-sized poultry operations.

4. Defendant USDA is the U.S. government department that houses Defendant FSIS.

5. Defendant FSIS denied FWW's FOIA requests and appeals at issue. FSIS's staff also wrote and approved the final the NPIS rules.

## IV.

## General Allegations

### A. Background on the subject of FWW's FOIA requests: poultry slaughter plants opting into NPIS

6. In 1957, Congress passed the Poultry Products Inspection Act ("PPIA") based on findings that unwholesome, adulterated, or misbranded poultry products injure public welfare and consumers, destroy markets, and result in sundry losses to producers and processors. The law provides Defendant USDA with the authority to protect consumer health and welfare by assuring that poultry products are wholesome, not adulterated, and properly marked, labeled, and packaged. 21 U.S.C. § 451 (2012).

7. In pursuance of this policy, the PPIA establishes a detailed scheme for the federal inspection of poultry in slaughterhouses. Defendants' inspection-system rules dictate how establishments must accommodate federal inspections, including setting how fast slaughter lines can operate, also known as "line speeds;" the numbers of inspection stations that establishments must set up, which then dictate how many inspectors are on each line inspecting carcasses; and the maximum number of birds to be inspected by each inspector per minute.

8. On August 21, 2014, Defendants finalized new rules implementing a new inspection system, known as NPIS, for young chicken and turkey slaughter establishments.

9. For establishments choosing to operate under the new system, plant personnel are solely responsible for removing the poultry that have visible defects and trimming and reprocessing them prior to presentation to federal inspectors. Only one federal inspector is positioned at the end of the slaughter line, and this inspector is tasked with inspection of each

carcass. One premise of the NPIS rules is that they will give greater flexibility to plants in configuring their evisceration operations than they had under the prior systems.

10. Defendants have justified NPIS, in part, because of the alleged public health benefits from shifting agency resources to allow FSIS inspectors to perform more offline inspection activities, such as microbial testing and other verification checks.

11. The NPIS rules do not require federal inspectors to increase their offline verification tasks, however.

12. And, any presumed increase in offline government inspections is dependent on the agency's having sufficient resources to ensure that at least one verification inspector will be assigned to each line.

13. NPIS is a voluntary system, as establishments can instead choose to continue operating under their existing inspection system.

14. To opt in, a company is required to submit notice to the Defendants that it intends to operate under the new system.

15. An establishment that does not provide notice to the Defendants that it intends to operate under the NPIS rules cannot do so.

16. Opting into NPIS does not necessarily mean that the plant will increase production volume at the plant.

**B. Defendants' denial of FWW's FOIA request (2015-00312)**

17. FWW submitted a FOIA request on October 24, 2014, seeking the "names and numbers of the federal establishments that have been granted permission by FSIS to adopt . . . NPIS[] as described in 79 Fed. Reg. 49,565-49637, as well as those which have requested such permission."

18. FWW did not seek all of the correspondences between the USDA and companies that might seek to opt into NPIS.

19. FWW's request only sought the identities of those companies that had begun operating or had requested permission to operate under the new system.

20. In a letter dated May 7, 2015, Defendants denied this request (FOIA-2015-00032), in full, on the grounds that the requested names of plants were exempt from disclosure under 5 U.S.C. § 552(b)(4) (Exemption 4). A separate letter, dated June 12, 2015, clarified that the agency was withholding such documents because "the responsive records consist solely of confidential future business plans that were submitted by the establishments to FSIS. The denial of [the] request at this time does not preclude [FWW's] right to request the names of plants operating under NPIS in the future. FSIS anticipates that the names of the plants participating in NPIS will be releasable after they begin implementation . . . ."

21. On July 24, 2015, FWW appealed Defendants' denial, believing it was timely because of the agency's June 12 letter, but Defendants' deemed it no so based on its May 7, 2015 denial letter. FWW has not sought to challenge this determination.

22. Instead, on September 18, 2015, FWW re-submitted its original request (FOIA-2015-00312), which is the subject of this complaint.

23. On April 27, 2016, Defendants provided an interim release of documents in response to this renewed request. It included one spreadsheet with 40 plants listed. This interim release was a list of plants that had begun operation under NPIS at the time of FWW's September 18, 2015 request. The list did not include those plants that had requested permission to begin operation under NPIS, but had not begun operating under the system as of this date.

24. In a letter dated July 29, 2016, Defendants denied the remainder of FWW's request, indicating that they had identified one (1) responsive document, but that it would be withheld in full, again on the basis of Exemption 4.

25. The withheld documents contain the names of the facilities that had requested permission to participate in NPIS, but that had not begun operating under the system at the time of FWW's September 18, 2015, request.

26. On September 12, 2016, FWW timely appealed this denial.

27. On November 16, 2016, Defendants denied the appeal.

28. While Defendants have released the identities of those facilities that are operating under NPIS, it has never released or otherwise made public the identities of those plants that have sought permission to operate under Defendants' NPIS rules.

**C. Defendants' denial of FWW's FOIA request (2015-00201)**

29. Seeking a better understanding of the reasons for the Defendants' earlier May 7, 2015 denial of FWW's original FOIA request (the specific request that FWW has never challenged, because its appeal was deemed untimely), as well as the process that the agency followed for making such a determination, FWW submitted a FOIA request on May 15, 2015 seeking "all correspondence, memos, notes of telephone calls, electronic messages, transcripts, minutes and notes of meetings and/or other memorializations of contact related to FOIA request 2015-00032."

30. On November 6, 2015, the agency responded to FWW's request, indicating that while it had identified 258 pages of records that were responsive, it was withholding portions of these documents as privileged under 5 U.S.C. § 552(b)(4), (5) and (6) (Exemptions 4, 5, and 6).

31. The information responsive to this request included correspondences that the

Defendants had with five of the seven establishments that had requested permission to operate under NPIS at the time of the request, pursuant to Executive Order 12,600 and 7 C.F.R. § 1.12(a) and (e).

32. In the 258 pages of documents that Defendants released, Defendants withheld all of the identities of the companies that requested permission to operate under the NPIS at the time of FWW's original FOIA request 2015-00032, regardless of whether they contended their identities should be confidential.

33. Based on these plant responses, Defendants determined that the release of all identities of companies requesting permission to operate under NPIS should not be released under FOIA Exemption 4.

34. Defendants have identified no other correspondences with companies besides those released on November 6, 2015, relating to Defendants' determination that all identities of establishments requesting to operate under NPIS fall under Exemption 4.

35. Defendants have not asked any other companies with poultry establishments seeking permission to operate under NPIS after May 15, 2015, whether the they contend their identity is confidential or privileged.

36. Not one of the correspondences in these 258 pages of released documents indicates that an establishment would operate under NPIS without providing the Defendants notice, if believed that its identity would be made public.

37. Defendants withheld parts of a memo and correspondences that iterated the basis for the agency's denial of FOIA request 2015-00032, claiming that they were covered under Exemptions 4 and 5.

38. On December 14, 2015, FWW submitted a timely appeal of the Defendants' partial

denial of FOIA request 2015-00201. FWW did not appeal Defendants' withholdings under Exemption 6, only the information withheld under either Exemptions 4 or 5.

39. On July 29, 2016, Defendants denied FWW's appeal of Defendants' partial denial of FOIA request 2015-00201 on the basis of Exemptions 4 and 5.

40. While Defendants have released the identities of those facilities that are operating under NPIS, it has never released or otherwise made public the identities of those plants that have sought permission to operate under Defendants' NPIS rules.

## V.

## First Claim for Relief

### Defendants Have Violated FOIA by Failing to Disclose Records Responsive to FOIA Request 2015-00312.

41. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-40 in the complaint as if fully set forth herein.

42. Under FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A) (2012).

43. FWW's FOIA request 2015-00312 reasonably described the agency records it sought and was made in accordance with FDA's rules and procedures.

44. The Defendants denied the request and failed to provide all responsive documents.

45. The Plaintiff exhausted its administrative remedies by filing a timely appeal.

46. There is no applicable legal justification for Defendants to withhold the requested records.

47. Therefore, Defendants have violated FOIA by failing to disclose the requested records to the Plaintiff.

## Second Claim for Relief

### Defendants Have Violated FOIA by Failing to Disclose Records Responsive to FOIA Request 2015-00201.

48. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-47 in the complaint as if fully set forth herein.

49. FWW's FOIA request 2015-00201 reasonably described the agency records it sought and was made in accordance with FDA's rules and procedures.

50. The Defendants denied the request and failed to provide all responsive documents.

51. The Plaintiff exhausted its administrative remedies by filing a timely appeal.

52. There is no applicable legal justification for Defendants to withhold the requested records.

## VI.

## Relief Requested

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare as unlawful Defendants' failure to disclose the records that Plaintiff requested on September 18, 2015 (FOIA-2015-00312);

B. Declare as unlawful Defendants' failure to disclose the records that Plaintiff requested on May 15, 2015 (FOIA-2015-0201);

C. Order Defendants to expeditiously provide all the records requested by Plaintiff;

D. Exercise close supervision over Defendants while they process Plaintiff's request;

E. Award Plaintiff his costs and reasonable attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

F. Award any other relief that the Court deems just and proper.

Respectfully submitted,

/s/

ZACHARY B. CORRIGAN
(D.C. Bar No. 497557)
Food & Water Watch
1616 P Street NW
Suite 300
Washington, DC 20036
(202) 683-2451 (phone)
zcorrigan@fwwatch.org (e-mail)

*Attorney for Plaintiff*

Dated: June 9, 2017